UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-62051-CIV-COHN

TONIA JONES,

Magistrate Judge Seltzer

    Plaintiff,

vs.

GREAT HEALTHWORKS, INC.,

    Defendant.
_____/

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Final Judgment [DE 14], Plaintiff's Response to Defendant's Motion [DE 19], and Defendant's Reply [DE 21]. The Court has carefully considered the motion, all related filings, and is otherwise fully advised in the premises.

### I.  BACKGROUND

Plaintiff Tonia Jones ("Plaintiff") initially filed this action against Defendant Great Healthworks ("Defendant") in state court for two alleged violations of Title VII – hostile work environment sexual harassment and retaliation. Defendant removed this case to federal court. After a period of discovery, Defendant moves for summary judgment.

Most of the facts in the record are undisputed for purposes of the motion for summary judgment.[1] Plaintiff worked for Defendant as a customer care representative from January 13, 2010 until May 5, 2010. She alleges that three incidents of sexual harassment by her supervisor, Kenneth Royster, caused her constructive discharge.

---

[1] To the extent facts are in dispute, the Court must accept Plaintiff's version of those facts for purposes of deciding the motion for summary judgment.

The first and second incidents occurred on March 4, 2010.  Sometime in the morning, Plaintiff told Royster that she needed some supplies.  Defendant had recently moved into a new building and Royster had told those he supervised that if they needed any office supplies they should let him know.  Royster told Plaintiff to come with him and they walked to the other side of the office building away from the executive offices.  Upon opening a door and entering the room, Plaintiff noticed that the light was off, though from light coming in through the window blinds she could see there were no supplies.  Royster said, "I want to feel you."  Exhibit 3 to Defendant's Motion, Deposition of Tonia Jones at 140 [DE 14-1].  Plaintiff said, "Move, boy, don't play with me."  Id., 141.  When Plaintiff attempted to leave the room, Royster put his hand on the door to block her, said "look how hard you get my dick," and then grabbed his crotch.  Id.  Plaintiff then moved his hand away from the door and left the room.

Later the same day around 3:00pm, Plaintiff walked past Royster's cubicle and he asked her where she was going.  Plaintiff said she was going to the restroom.  After Plaintiff used the restroom and opened the door to leave, Royster stepped in.  He reached for and momentarily "grazed across" Plaintiff's breast with his hand for "a second, a split second, two seconds."  Id., 132, 147.  Plaintiff pushed Royster's hand away and stepped back.  As she did so, Royster reached for Plaintiff's vaginal area but Plaintiff stepped back too quickly for him to actually touch her.  Plaintiff said "Move!" and "you better stop playing" and "I'm going to tell somebody."  Id. at 149.  Royster said "no one is going to believe you."  Id.  Plaintiff and Royster then exited the restroom and returned to their desks.  Plaintiff told a co-worker, Cecily Barnett, about what had happened and contemplated leaving the company, but did not know what else to do.

2

About one to two weeks later, a third incident occurred at Plaintiff's cubicle. As Plaintiff was finishing a telephone call at her cubicle, Royster came to her desk and asked Plaintiff to lunch, as he had done in the past. Plaintiff told him "no, I'm not going to lunch with you." Id., 69. Royster than grabbed his crotch on the outside of his clothing for a few seconds and said "look how hard my dick is." Id., 68. Plaintiff then took a photo with her cell phone of Royster holding his crotch. She then said "move boy," and Royster stepped away. This incident lasted less than or about one minute.[2]

After this incident, Plaintiff told her co-workers Cecily Barnett and Tina Vohlwinkel what had happened. Vohlwinkel suggested telling Royster's supervisor, Wanda Vargas, but Plaintiff decided not to because "they [Vargas and Royster] have been in the company longer and they're in the same department and they were like pretty much real close." Id., at 75 [DE 19-2]. Instead, the next day, Plaintiff left work early.

Javier Mendez, a supervisory employee of Defendant outside Plaintiff's chain of command, called Plaintiff at home the next day for unrelated reasons. Plaintiff told Mendez she was not returning to work and relayed details to Mendez regarding Royster's conduct. Mendez obtained her approval to inform Miles Dupree, Chief Operating Officer, and David Boden, Executive Vice President of Financial Operations. Within one or two days, Mendez called Plaintiff back and told her that Dupree and Boden wanted to meet with her.

---

[2] Plaintiff's phone was damaged before she could show the photograph to Defendant's officers who investigated her claims. See below. Plaintiff did show the picture to a co-worker who could not tell who was in the picture.

3

Plaintiff told Mendez she would come in for the meeting within two days, but Plaintiff did not do so, instead returning the following week to meet on March 22, 2010 with Dupree and Boden. Plaintiff provided full details to Dupree and Boden, who told her that after she had not come in initially to discuss the allegations, they had investigated the allegations, including confronting Royster, who denied the allegations. The March 22 meeting ended with Plaintiff telling Dupree and Boden that she enjoyed working for Defendant and she would let them know if she wanted to return by the end of the day. Plaintiff did not call or return to work at that time. Mendez called Plaintiff to see how she was doing and Plaintiff informed him that she was coming in to the office to pick up her paycheck. Boden came out to meet Plaintiff at her car and again told her her position was still available and asked if she wanted to return to work. Plaintiff agreed and returned to work on March 29, 2010. Plaintiff was paid for all time she was out of the office.

When Plaintiff returned to work, she was reassigned to a new supervisor and a work location away from Royster. However, Plaintiff disputes that this happened right away. Just a couple of days after her return, Plaintiff encountered Royster in her work area. Plaintiff complained to Boden and Christina Palmer in the Human Resources Department and told them she remained uncomfortable working in the same department as Royster. Plaintiff was then moved to a different department. Her new supervisor treated her with courtesy and respect and Royster made no more advances toward Plaintiff. Boden would periodically come by her work area to see if everything was okay and Plaintiff assured him that it was. However, on May 5, 2010, Plaintiff walked to Dupree's office, where Dupree, Boden and CEO Ken Meares were all

present, and announced she was resigning.  Plaintiff asked to speak with Meares and Boden told her she could not, but that she could put it in writing.

The other relevant area where the facts are material concern Defendant's sexual harassment policy.  The record is undisputed that Defendant had in place a policy against sexual harassment which was typically included in the Employee Handbook given to new employees.  Exhibit 1 to Defendant's Motion,  Declaration of Christina Palmer, [DE 14-1].  The record is also undisputed that Plaintiff signed a form acknowledging her receipt of the Handbook on January 13, 2010.  Exhibit 2 to Defendant's Motion [DE 14-1].  However, Plaintiff testified in her deposition that she never received the anti-harassment policy, never was told what the policy contained, and not until after she complained did Defendant post notices of the anti-harassment laws.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production

shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B.  Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Henson v. Dundee, 682 F. 2d 897, 904 (11th Cir.

1982).  A Plaintiff establishes a prima facie case of hostile work environment by showing: (1) the Plaintiff belongs to a protected group;  (2) she was subjected to unwelcome sexual harassment;  (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (5) the employer is liable.  Meritor, 477 U.S. at 65;  Sparks v. Pilot Freight Carriers, Inc., 830 F. 2d 1554 (11th Cir. 1987); Mendoza v. Borden, Inc., 195 F. 3d 1238 (11th Cir. 1999) (en banc).

"The EEOC Guidelines emphasize that the trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" Meritor, 477 U.S. at 69; citing 29 CFR § 1604.11(b) (1985). "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component."  Mendoza, 195 F.3d at 1256; Harris, 510 U.S. at 21-22.  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Services, Inc., et al., 523 U.S. 75, 80 (1998).  All of the circumstances may include; the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).  "No single factor is required."  Id. at 23.

As the Supreme Court stated in Meritor, "'mere utterance of an...epithet which

engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII.  Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 21.  "Title VII is not a federal 'civility code.'" Mendoza, 195 F.3d at 1245; Oncale, 523 U.S. at 118.

### 1.  Severity of Conduct

For purposes of the summary judgment motion, it is clear that Plaintiff testified that the conduct was unwelcome, sexual in nature, and related to her gender.  Defendant argues that Plaintiff cannot show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.  Defendant relies heavily on the Mendoza opinion, where repeated vulgar comments were deemed not sufficiently pervasive but merely rude.  The crucial difference in the present case is that Royster isolated and cornered Plaintiff twice, once in the "supply room" and once in the restroom, with the restroom incident involving a sexual touching, however brief, and a second attempted sexual touching immediately thereafter.  The third incident, occurring one to two weeks later, again involved more than mere comments, with Royster grabbing his enlarged crotch in Plaintiff's presence.  Based upon this record, the Court concludes that there is a genuine issue of material fact as to whether the harassment in this case was sufficiently severe.

### 2.  Employer Liability

Turning to the final element of the test, whether Defendant is liable for sexual

harassment by a supervisor of an employee, the standard is that:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c).  The defense comprises two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.  And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.  No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998); Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998).

In this case, Plaintiff asserts that the tangible employment action was a constructive discharge of Plaintiff.[3]  The United States Supreme Court held that constructive discharge can be considered a "tangible employment action" in a hostile environment action.  Pennsylvania State Police v. Suders, 542 U.S. 129, 140 (2004).  However, in approving decisions from the First and Seventh Circuits, the Court

---

[3] There was some testimony from Plaintiff that Royster threatened after one of the incidents that he would negatively affect her "numbers," which could affect her compensation.  The record is clear that Plaintiff's compensation was not in fact affected.

explained that when there is no official act underlying the constructive discharge, such as the unauthorized supervisory conduct present here, the employer is entitled to present the affirmative defense described in Faragher/Ellerth.  Suders, 542 U.S. at 149-150.  In Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27 (1st Cir. 2003), "the plaintiff claimed a constructive discharge based on her supervisor's repeated sexual comments and an incident in which he sexually assaulted her." Id.  The Supreme Court commented that the affirmative defense was proper in such a case.

Defendant contends that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  The undisputed facts in this regard are that Defendant did immediately investigate the accusations once Plaintiff told Mendez what had happened, and did take steps to reassign Royster once Plaintiff returned to work.  While there is a dispute about how far away from Royster's area Plaintiff was initially moved, when Plaintiff complained that it was not far enough, Plaintiff was moved to a different department.  Plaintiff's contention that Royster was insufficiently punished is not part of this legal analysis.  The Eleventh Circuit has stated that "all that is required of an investigation is reasonableness in all of the circumstances."  Nurse "BE" v. Columbia Palms West Hospital, Inc., 490 F.3d 1302, 1311 (11th Cir. 2007) (quoting Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1304 (11th Cir. 2007)).

It is also undisputed that Plaintiff did not complain to any supervisor or the Human Resources Department until after she was contacted by Javier Mendez on an unrelated matter.  Although Plaintiff disputes that she was ever given a copy of the anti-

harassment policy, it is undisputed that Defendant in fact had such a policy. Even assuming that Plaintiff cannot be held to follow the written policy that she testified that she never saw (despite her signed acknowledgment that she received the employee handbook),[4] Plaintiff also failed to initially take advantage of the opportunity to come and talk with Dupree and Boden after she voluntarily left work the day after the cubicle incident, postponing that meeting to March 22. During that period of time, Defendant investigated the allegations Plaintiff relayed to Mendez, and could not corroborate the allegations.

The Court therefore concludes that Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior by maintaining an anti-harassment policy, by promptly investigating Plaintiff's allegations, and by correcting the problem by separating Plaintiff and Royster at the workplace, without a detriment to Plaintiff financially. In addition, Plaintiff unreasonably failed to initially take advantage of the opportunity to meet with Boden and Dupree. Defendant is therefore not liable for the harassment under the Faragher/Ellerth defense.

### C.  Retaliation

Defendant also seeks summary judgment as to Plaintiff's claim for retaliation. To establish a prima facie case for retaliation, Plaintiff must show that: "1) she engaged in protected activity; 2) her employer was aware of that activity; 3) she suffered adverse employment action; and 4) there was a causal link between her protected activity and

---

[4] In Plaintiff's favor is the fact that the "Handbook" was apparently a packet with various policies contained therein and not a single bound document.

the adverse employment action." Maniccia v. Brown, 171 F. 3d 1364, 1368 (11th Cir. 1999). "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)). "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Holifield, 115 F.3d at 1566 (quoting E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)). However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff" and "[t]he employer's awareness of the statement may be established by circumstantial evidence." Holifield, 115 F.3d at 1566 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991)).

In this case, the critical issue is whether an adverse action occurred. "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citations omitted). The Gupta decision used the standard that an adverse action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta, 212 F.3d at 587 (quoting Robinson v. City of

Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997)).  Plaintiff alleges that the adverse action she suffered was a constructive discharge.  A constructive discharge is shown when "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign."  Suders, 542 U.S. at 141.

Upon the record before the Court, Plaintiff has not shown that she suffered a constructive discharge.  After she returned to work and was moved to a different department than Royster, Plaintiff felt "uncomfortable" because Royster had not been disciplined, Royster continued to "mumble little stuff" under his breath when he walked by her cubicle, and she believed her co-worker Vohlwinkel had been told not to speak with her.  Plaintiff's Deposition at 96, 114, 119.[5]  She resigned for these reasons.  Even accepting Plaintiff's hearsay contention that Vohlvinkel was asked not to be friends with her anymore, a reasonable person would not have felt compelled to resign, particularly given her separation from Royster and her satisfaction with her new supervisor and department.  This Court can conclude as a matter of law that Plaintiff has failed to show a constructive discharge.  Thus, she has failed to show an adverse action and failed to present a prima facie case for retaliation.

---

[5] Plaintiff testified that Vohlwinkel told her that Boden and Dupree had told Vohlwinkel not to speak with Plaintiff or be friends with her.  Defendant contends that this is hearsay and not admissible evidence under Rule 56.  Rather, Defendant submits a sworn statement of Vohlwinkel in which she testifies that Boden and Dupree never told her what to write in her statement and never asked her to do anything that she was uncomfortable doing.  Exhibit 4 to Defendant's Motion, Sworn Statement of Tina Vohlwinkel at 26-27.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Final Judgment [DE 14] is hereby **GRANTED**;

2. The Court shall separately enter a final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of July, 2011.

_____
JAMES I. COHN
United States District Judge

copies to:
Counsel of record on CM/ECF